**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X   05 CV 2450 (NG) (RER)
**GELSOMINA SERRAPICA,**

                **Plaintiff,**

    **-against-**                                                                                           **OPINION & ORDER**

**LONG-TERM DISABILITY PLAN OF THE**
**CHASE MANHATTAN BANK AND CERTAIN**
**AFFILIATED COMPANIES,**

                **Defendants.**
-------------------------------------------------------------------X

**GERSHON, United States District Judge:**

Plaintiff Gelsomina Serrapica brings this action against defendant Long-Term Disability Plan of the Chase Manhattan Bank and Certain Affiliated Companies ("Chase") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 *et seq.*, asserting that Chase failed to provide her with notice of changes to her benefits plan and wrongfully denied her long-term disability benefits. Chase now moves for summary judgment, arguing (1) that the court lacks jurisdiction because Ms. Serrapica failed to exhaust her administrative remedies and (2) that, on the merits, Ms. Serrapica cannot establish any right to the relief she seeks because Ms. Serrapica was informed and aware that she needed to enroll in the long-term disability plan, yet failed to enroll. For the reasons discussed below, Chase's summary judgment motion is granted.

**I.     FACTS**

Unless otherwise stated, the following facts are undisputed.

Ms. Serrapica began her employment at Chase Manhattan Bank in 1966 and left in 1972 after she gave birth to a child. She resumed employment at Chase Manhattan Bank in October 1989 and worked as a file clerk, receptionist, and general assistant until January 2000. In January 2000, Ms.

Serrapica began a short-term disability leave due to a medical condition. She received short-term disability benefits beginning at that time and never returned to work at Chase Manhattan Bank. Ms. Serrapica continued to receive short-term disability benefits until June 30, 2000, at which time Ms. Serrapica received a letter informing her that she was ineligible for long-term disability benefits. Chase maintains that Ms. Serrapica is ineligible for long-term disability benefits because she failed to enroll in Chase's voluntary long-term disability benefits plan.

From the time that Ms. Serrapica resumed her employment at Chase in 1989 until the end of 1996, Chase employees were automatically enrolled in the Heritage Chase Long Term Disability Plan at no cost to the employees. However, after a merger between Chase and Chemical Bank in 1997, Chase developed a voluntary long term disability plan that required employees to affirmatively enroll and pay premiums before collecting any benefits. Chase sent out various benefits enrollment documents to its employees informing them of the change in benefits and alerting them of the need to enroll if they wished to receive benefits.

Ms. Serrapica testified in her deposition that she understood that she had to affirmatively enroll in the long term disability plan in order to receive long term benefits starting in 1997 and that, if she did not take steps to enroll in the new long term disability plan, that she would not be eligible for long term disability coverage.[1] Chase's computer records, however, reflect that Ms. Serrapica

---

[1] Q: It was clear in your mind that you needed to take steps to enroll in the LTD coverage in 1996 for coverage starting in 1997; is that correct?
A: Yeah.
Q: That you needed to do something?
A: For long term disability?
Q: Yes.
A: Yeah, I think so.
Q: And you understood that regardless of what coverage, LTD coverage you may have had previously, at that time you needed to take some specific step to have

2

did not enroll in the long term disability plan in 1997.  Similarly, Chase's computer records indicate that Ms. Serrapica did not enroll in the long term disability plan in 1998, 1999, or 2000.  Based on these computer records, Chase sends enrollment confirmation statements to its employees.

In her deposition, Ms. Serrapica claimed that the confirmation statements that she received from Chase indicated that she was in fact enrolled in the long term disability plan.  Furthermore, Ms. Serrapica stated that her payroll indicated deductions to cover the cost of long term disability insurance.  Although Ms. Serrapica asserted in her deposition that she had received documents confirming her enrollment, she has not produced any of these documents or letters.  Moreover, Ms. Serrapica's payroll records do not indicate any deductions for long term disability coverage.

Chase's Summary Plan Description, in a section entitled "Appealing Claims," outlines the procedure for appealing claims: "you can write to the plan administrator, care of the Benefits Appeal Committee, if your denial for benefits is based on issues other than those directly related to determining whether you've incurred a disability or the amount or duration of benefits."  Although the Summary Plan Description clearly outlined the appeals procedure, it is unclear whether Chase notified Ms. Serrapica of her right to appeal in the letter denying her long term benefits, and Ms. Serrapica claims that she was never informed of her right to appeal the decision to deny benefits.[2]

---

            coverage in 1997?
A:    Right.
\*\*\*\*
Q:    Okay.  But my question is did you understand that if you did not enroll in the LTD coverage within the appropriate time in the fall of 1996 that you would not have LTD coverage in 1997?
A:    Yeah, I'm positive.

[2]Neither party provided a copy of this July 2000 letter in which Ms. Serrapica was denied long term disability benefits.  Ms. Serrapica claims that she was never notified of her right to

After Ms. Serrapica was denied long term disability benefits in July 2000, Ms. Serrapica's legal counsel wrote several letters to Chase's Employee Relations Department and one letter to a Senior Vice President of JP Morgan Chase. Pl. Ex. 1-5. However, there is no evidence that Ms. Serrapica appealed to the plan administrator or Benefits Appeal Committee as required by the Summary Plan Description.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Motions for summary judgment are granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *Id.* The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

### B.   The Exhaustion Requirement

A plaintiff who asserts an ERISA claim must first exhaust the administrative appeals that are provided in her relevant plan or policy.[3] *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). This exhaustion requirement is not statutory in origin, but rather is a

---

appeal.

[3]Although exhaustion of administrative remedies is not a jurisdictional prerequisite, a defendant may raise the plaintiff's failure to exhaust as an affirmative defense. *Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435, 443, 446 (2d Cir. 2006).

4

judicially created doctrine, and courts have waived the exhaustion requirement in certain factual scenarios where exhaustion would be futile. *Sibley-Schreiber v. Oxford Health Plans*, 62 F. Supp. 2d 979, 985 (E.D.N.Y. 1999). Futility in the ERISA context is "perhaps best understood as a term of art that considers whether, in light of both the claimant's and the plan administrator's actions, it is *fair* to require the dismissal of the claimant's suit pending her reapplication for benefits in accordance with procedures set forth in the summary plan description." *Ludwig v. NYNEX Serv. Co.*, 838 F. Supp. 769, 781 (S.D.N.Y. 1993) (emphasis in original).

Some of the situations in which courts have found futility and waived the exhaustion requirement include (1) cases where there is a material issue of fact as to whether the plaintiff was informed of the appeals process and (2) cases where the plan has failed to respond to the claimant's, or the claimant's representative's, written request for a review of the plan's benefit eligibility determination. *Id.*; *Novak v. TRW, Inc.*, 822 F. Supp. 963, 969 (E.D.N.Y. 1993). In *Ludwig*, for example, the court waived the exhaustion requirement where the claimant and claimant's representative made several written inquiries to the claimant's employer, and the employer failed to inform the claimant of his right to appeal and failed to respond to a letter requesting review of the benefits decision. 838 F. Supp. at 782. As in *Ludwig*, Ms. Serrapica claims that she and her counsel made several written inquiries to her former employer regarding the denial of her benefits and that Chase failed to inform her of her right to appeal and failed to respond adequately to her inquiries. In response, Chase argues that the exhaustion requirement should not be waived because Ms. Serrapica directed her inquiries to the wrong individual, never technically requested a review of the benefits determination, and knew or should have known of her appeal rights and the proper appeals procedure because the Summary Plan Description included information about how to conduct an

administrative appeal.

Chase's arguments against waiving the exhaustion requirement are unpersuasive. First, the fact that Ms. Serrapica contacted the wrong individual at Chase when inquiring about the denial of her benefits does not necessarily mean that the court should enforce the exhaustion requirement. In *Patterson v. J.P. Morgan Chase & Co.*, the court waived the exhaustion requirement even though the plaintiff followed the wrong procedure for administrative appeals by contacting the wrong individual within the human resources department. 2002 WL 207123 at *3-4 (S.D.N.Y. 2002). The court noted that the employer either should have forwarded the correspondence to the correct individual or instructed the plaintiff to write to the correct individual. *Id.*

Second, even if Ms. Serrapica and her counsel did not specifically request an appeal or a review of benefits,[4] there exists a material issue of fact about whether Ms. Serrapica was adequately informed of her right to appeal and request a review of benefits. The denial letter itself–not just the plan's handbook–must include a notice of appeal rights. *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 107-108 (2d Cir. 2003) (finding that plaintiff had been denied the opportunity for full and fair review under ERISA and that a denial letter was inadequate in part because the denial letter failed to inform the individual of her appeal rights even though the plaintiff had been provided with other materials that did inform her of her appeal rights); *Sibley-Schreiber*, 62 F. Supp. 2d at 988 ("other than the fact that the appeal process was set forth in the membership handbook (that some

---

[4] It is clear from the correspondence that Ms. Serrapica's counsel was seeking information necessary for a review of benefits. In a letter dated October 25, 2000, approximately three months after Ms. Serrapica learned of her ineligibility for long-term disability benefits, Ms. Serrapica's counsel wrote a letter to Chase stating that, "Chase . . . has not contacted nor given Mrs. Serrapica any notification as to her current status. . . . For example, is she terminated? Is she on leave? What are, if any, her COBRA rights and other benefit rights?"

plaintiffs deny ever receiving), the availability of an appeal process and the mandatory nature of it were never expressly communicated to the plaintiffs before the filing of this complaint" and "[r]elying on a simple provision in a handbook that the employee may or may not see, much less understand, is unreasonable . . ."). Where a plaintiff has not been informed of her right to an administrative appeal, courts can waive the exhaustion the requirement. *See Novak,* 822 F. Supp. at 969; *Clay v. ILC Data Device Corp.*, 771 F. Supp. 40, 45 (E.D.N.Y. 1991). Here, the only evidence that Ms. Serrapica was notified of her appeal rights is the fact that the Chase's Summary Plan Description includes instructions on how to file an appeal. Chase has presented no evidence that the letter denying Ms. Serrapica benefits included a notice of appeal, nor has Chase presented any evidence to indicate that Chase informed Ms. Serrapica of her appeal rights in response to her counsel's requests for information. Moreover, Ms. Serrapica claims that she has never received any notice of a right to appeal the denial of her benefits. Because a notice of administrative appeal rights that appears only in a Summary Plan Description is not necessarily adequate and because Ms. Serrapica claims that she never received notice of her right to appeal, a material issue of fact exists as to whether Ms. Serrapica was informed of the appeals process. Accordingly, the exhaustion requirement will be treated as waived for purposes of this motion, and the court now proceeds to review the merits of Ms. Serrapica's claim.

    **C.  Whether Ms. Serrapica Is Entitled to Long Term Disability Benefits**

  Section 502(a)(1)(B) of ERISA provides that a plaintiff may bring a civil action "to recover benefits *due to him under the terms of his plan* . . ." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). A plaintiff who brings a claim under this section is asserting, in essence, that she has a contractual right to benefits under the plan. *Siklos v. Northeastern Anesthesia Serv., P.C.*, 473 F. Supp.2d 494,

497 (S.D.N.Y. 2007). Consequently, a "suit for benefits due under the terms of an ERISA-governed plan necessarily fails where the participant does not qualify for those benefits . . . ." *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 170 (2d Cir. 2005). Where a plaintiff has actual notice that she needs to enroll in a plan in order to qualify for benefits, the plaintiff cannot use her employer's failure to provide a summary plan description as an excuse for failing to enroll. *Id.* Accordingly, even though the employer in *Weinreb* failed to provide the plaintiff with a summary plan description, this did not excuse the plaintiff's failure to enroll because the plaintiff had actual notice of the need to enroll, and the plaintiff therefore did not qualify for life insurance benefits. *Id.* Similarly, Ms. Serrapica was on actual notice that she needed to enroll in Chase's long term disability plan, and her claims that Chase failed to inform her of the need to enroll are therefore unavailing. Ms. Serrapica failed to enroll despite the fact that she had actual notice of the need to enroll, and therefore is not entitled to benefits under the plan.

Chase has presented persuasive evidence that Ms. Serrapica never enrolled in the long term disability plan. Computer records that reflect Ms. Serrapica's enrollment information show no indication that she enrolled in long term disability coverage. Moreover, Chase's payroll records show no deductions from Ms. Serrapica's pay to cover the cost of long term disability benefits. A party opposing a summary judgment motion must produce specific evidence to show that there is a genuine issue of fact and cannot rely merely on the allegations in her pleadings or on conclusory statements. *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Although Ms. Serrapica claims in her deposition that she did in fact enroll in the long term disability plan and that she received written confirmation of her enrollment, she has presented no documentary evidence to support these assertions: no copies of any enrollment sheets that reflect her enrollment, no

confirmation letters indicating that she was enrolled, and no pay stubs showing deductions to cover the costs of the long term disability insurance. Furthermore, previous correspondence between Ms. Serrapica's counsel and Chase, as well as Ms. Serrapica's complaint, imply that Ms. Serrapica did not affirmatively enroll in the long term disability plan because of Chase's failure to notify her of the need to enroll.[5] Given that Chase has produced evidence that Ms. Serrapica did not enroll in the long term disability plan, Ms. Serrapica's unsupported assertions are insufficient to raise a triable issue of fact. Because Chase's long term disability plan requires enrollment to qualify for benefits and Ms. Serrapica failed to enroll despite the fact that she had actual notice of the need to enroll, Ms. Serrapica is not entitled to benefits under the plan.

For the reasons outlined above, Chase's motion for summary judgment is granted**.** Clerk of Court is directed to enter judgment for the defendant.

**SO ORDERED.**

/s/
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
August 3, 2007

---

[5]For example, Ms. Serrapica's counsel wrote to Chase on July 27, 2000 that "[i]t is our understanding that when Chemical and Chase merged there was no notification to Mrs. Serrapica regarding any changes in her benefits a notice that would require her to act in any way." Plaintiff's Ex. 1.